UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ERIK LECKNER,<br><br>                         Plaintiff,<br><br>v.<br><br>GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.; APEX SYSTEMS, LLC,<br><br>                         Defendants. | Case No.:  21cv1109-LL-BLM<br><br>**ORDER:**<br><br>**1)  GRANTING DEFENDANT APEX SYSTEMS, LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT [ECF No. 20]**<br><br>**2)  GRANTING DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.'S MOTION TO DISMSS AMENDED COMPLAINT [ECF No. 22]** |

      Before the Court are (1) Defendant Apex Systems, LLC's ("Apex") Motion to Dismiss the Amended Complaint [ECF No. 20] and (2) Defendant General Dynamics Information Technology, Inc.'s ("GDIT") Motion to Dismiss the Amended Complaint [ECF No. 22]. Relator Plaintiff ("Plaintiff") filed an Opposition to both Motions to Dismiss [ECF No. 30], and Defendants filed Replies [ECF Nos. 33, 34]. The Court took this matter

under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). ECF No 26. For the reasons stated below, the Court **GRANTS WITH PREJUDICE** Apex's Motion to Dismiss and **GRANTS WITH PREJUDICE** GDIT's Motion to Dismiss.

## I.   BACKGROUND

### A.   Procedural History

On June 14, 2021, Plaintiff, proceeding pro se, filed a complaint under seal against Defendants (1) seeking to prosecute a False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33, *qui tam* claim on behalf of the United States, and (2) for retaliation in violation of the FCA, 31 U.S.C. § 3730(h). ECF No. 1. On June 18, 2021, Plaintiff filed an Amended Complaint ("FAC") under seal alleging the same two causes of action. ECF No. 2.

On October 21, 2021, the United States declined to intervene in this action. ECF No. 3. On the same day, the Court ordered the FAC to be unsealed and required Plaintiff to show cause why his FCA *qui tam* claim should not be dismissed because a person not represented by counsel cannot prosecute a *qui tam* claim on behalf of the United States. ECF No. 4. The Court subsequently granted multiple requests for extensions of time by Plaintiff to show cause, and Plaintiff ultimately responded on May 2, 2022. ECF No. 28. On May 4, 2022, the Court dismissed Plaintiff's FCA *qui tam* claim without prejudice. ECF No. 29.

On July 25, 2022, the Court *sua sponte* struck pages 1 through 16 of Plaintiff's Opposition [ECF No. 30] for exceeding the page limit but did not strike any pages from his memorandum of points and authorities [ECF No. 30-1]. ECF No. 35.

### B.   Factual Allegations

On January 16, 2018, Plaintiff was jointly employed as a lead engineer by GDIT and Apex to work on an information technology project for the U.S. Environmental Protection Agency (EPA). FAC ¶¶ 29, 55, 56. GDIT's contract with the EPA included providing "developmental, infrastructural, and operational services" for the EPA's electronic emergency management portal ("EMP"), which consists of a suite of highly advanced

software modules and tools for emergency management and preparedness. *Id.* ¶¶ 2, 30, 38, 45. Apex was a subcontractor to GDIT that provided engineering services. *Id.* ¶ 55.

In 2017, GDIT was responsible for transitioning the EMP system from Salient, a former contractor, to GDIT, and then to begin maintenance and implementation of the EMP system in 2018. *Id.* ¶ 59. GDIT failed to transition the EMP source code repository, but told EPA on and after January 30, 2018, that the EMP was successfully transitioned. *Id.* ¶¶ 6, 51. Subsequently, from January 30, 2018 through May 2018, Plaintiff told GDIT management that the source code repository needed to be retrieved from Salient and that without it the EMP system was not ready for implementation. *Id.* ¶ 13. When GDIT management initially dismissed these concerns, Plaintiff contacted EPA's EMP management from January 30, 2018 through May 2018 and explained the problems with the EMP, including the impending failure of the implementation without the original source code repository and GDIT's failure to transition, "to provide necessary accesses, rights, and permissions to the engineering team," and to "clear EMP's cybersecurity violations." *Id.* ¶¶ 13, 72. Subsequently, the EPA instructed GDIT to perform a late transition. *Id.* ¶ 13.

On April 16, 2018, Plaintiff warned GDIT and Apex again about the "technical difficulties with the EMP system without the source code repository and without properly administered rights, accesses, and permissions for GDIT and Apex employees to perform their work." *Id.* ¶ 14. GDIT learned that Plaintiff had communicated directly with the EPA. *Id.* ¶¶ 86, 87. Plaintiff was terminated from the EMP project on April 16, 2018. *Id.* ¶¶ 86, 14 n.2. Apex's account manager requested that Plaintiff provide information to her on his protected activities, and then reinstated Plaintiff the same day with the condition "that he no longer communicate directly with the EPA." *Id.* ¶ 86.

A GDIT supervisor "harassed" Plaintiff for continually raising the issue of the source code repository problem with GDIT and Apex management. *Id.* ¶ 83. An Apex account manager "made defamatory remarks" about Plaintiff "in private EPA.gov emails" when she learned that Plaintiff "was engaged in private protected activity with the EPA in an

official proceeding and investigation of fraud, waste, and abuse conducted by EPA management." *Id.*

On May 1, 2018, Plaintiff was assigned the task to perform a partial restoration of the source code repository "based on the broken developer's code base which was missing files." *Id.* ¶ 12. On May 25, 2018, Plaintiff completed the creation of a new source code repository based on the broken developer code. *Id.* ¶ 71. The following business day, May 29, 2018, GDIT discharged Plaintiff, and his access to the EPA network was cut off "only minutes" before a meeting with GDIT, Apex, and the EPA in which he had prepared "an overview of the deficiencies and ethical obligations of engineers." *Id.* ¶¶ 71, 14 n.2, 96. On June 13, 2018, Plaintiff was discharged by Apex. *Id.* ¶ 14 n.2.

Plaintiff was "retaliated and terminated by GDIT for reporting problems with the EMP system" to GDIT and the EPA, including that "GDIT was fraudulently billing the EPA for no work being performed on the EMP based on false claims." *Id.* ¶¶ 88, 93.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts pursuant to Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"When ruling on the motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not

attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice." *Joseph v. Am. Gen. Life Ins. Co.,* 495 F. Supp. 3d 953, 958 (S.D. Cal. 2020) (citing *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001)), *aff'd*, No. 20-56213, 2021 WL 3754613 (9th Cir. Aug. 25, 2021), *cert. denied*, 142 S. Ct. 2711 (2022). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Additionally, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes,* 181 F.R.D. 629, 634 (S.D. Cal. 1998).

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*

806 F.2d 1393, 1401 (9th Cir. 1986)). The Court may deny leave to amend where an amendment would be futile. *DeSoto*, 957 F.2d at 658 (citation omitted).

## III.   DISCUSSION

Because the Court previously dismissed Plaintiff's FCA *qui tam* claim on May 4, 2022, the Court will only address Defendants' Motions to Dismiss the sole remaining claim alleging retaliation under the FCA.

### A.   GDIT'S MOTION TO DISMISS

GDIT moves to dismiss Plaintiff's claim alleging retaliation under the FCA for the following reasons: (1) it is barred by the statute of limitations, (2) it is barred by collateral estoppel (issue preclusion), and (3) it fails to state a claim upon which relief may be granted. ECF No. 22-1 at 13–16.

Section 3730(h) of the FCA prohibits retaliation against any employee "because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h). A civil action for retaliation under the FCA "may not be brought more than 3 years after the date when the retaliation occurred." *Id.* Dismissal of an action is appropriate under Rule 12(b)(6) "on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

GDIT argues that Plaintiff's claim is time-barred because Plaintiff alleges that GDIT retaliated by removing him from the project on May 29, 2018, but did not file his complaint in this action until June 14, 2021. ECF No. 22-1 at 14–15; ECF No. 33 at 3; ECF No. 1.

The Court finds that it is apparent on the face of the complaint that Plaintiff filed his complaint in this matter more than three years after the date when the alleged retaliation by GDIT occurred. Plaintiff argues his complaint was timely filed because he received his discharge letter on June 13, 2018. ECF No. 30-1 at 45. However, Plaintiff states several times in the FAC that he was discharged by GDIT on May 29, 2018. FAC ¶¶ 14 n.2, 29, 71, 96. He attributes the June 13, 2018 discharge date to Apex. FAC ¶¶ 14 n.2, 29. Because

the Court finds that Plaintiff alleges retaliation by GDIT occurred on May 29, 2018, Plaintiff must have filed his complaint within three years, by June 1, 2021. *See* Fed. R. Civ. P. 6(a) (computing time).

The Court is not persuaded by Plaintiff's argument for equitable tolling. "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled on other grounds by Socop–Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194–96 (9th Cir. 2001) (en banc). Plaintiff claims that Defendants prevented him from "knowing and discovering the requisite elements of a prima facie case" until August 21, 2019 when he obtained a copy of an April 16, 2018 email from a GDIT program manager to her supervisor about replacing Plaintiff, which stated that "he's really gotten out of control with his communications and it's overflowing to the customer at this point." ECF No. 30-1 at 45; FAC ¶ 87. However, elsewhere in his Opposition, Plaintiff states that "[Plaintiff] had written his FCA complaint in June 2018, which was enhanced over time as evidence was recovered by FOIA and the EPA OIG." ECF No. 30-1 at 25. In another statement, he infers that he knew of a possible retaliation claim immediately upon his removal from the EPA project: "After his unlawful removal from the EPA project by defendant GDIT but before his discharge," he "filed complaints with the U.S. Department of Labor ("DOL") Occupational Safety and Health Administration ("OSHA") and the United States EPA Office of Inspector General ("EPA-OIG"), a federal partner of OSHA, for violations of the employee protection (whistle-blower) provisions" in various federal statutes. ECF No. 30-1 at 18. Plaintiff references this same retaliation claim he filed with the DOL in the FAC. FAC ¶ 15. Because Plaintiff filed claims alleging retaliation with the DOL before he obtained the email in 2019, he was aware he had a possible claim for retaliation before receiving that email. The Court does not find Plaintiff is entitled to equitable tolling until the receipt of the email in 2019, particularly when he began drafting his FCA complaint in June 2018 following his

discharge by GDIT on May 29, 2018. *See Lee v. ING Groep, N.V.,* 671 F. App'x 945, 948 (9th Cir. 2016) ("[P]laintiff is not entitled to equitable tolling up until the point he is certain that he was fired in retaliation.").

For the reasons above, the Court finds it is apparent on the face of the complaint that Plaintiff's claims against GDIT are barred by the statute of limitations and that Plaintiff is not entitled to equitable tolling. Under these circumstances, an amendment would be futile and could not cure this deficiency. *See DeSoto*, 957 F.2d at 658 (citation omitted). Accordingly, the Court **GRANTS** Defendant GDIT's Motion to Dismiss Plaintiff's claim alleging retaliation under the FCA **WITH PREJUDICE** and without leave to amend.[1]

### B.   APEX'S MOTION TO DISMISS

Apex moves to dismiss Plaintiff's claim alleging retaliation under the FCA for the following reasons: (1) it is barred by the statute of limitations, (2) it is barred by collateral estoppel (issue preclusion), and (3) it fails to state a claim upon which relief may be granted. ECF No. 20-1 at 14–19. The Court will analyze each of these alternative arguments in turn.

Apex filed a Request for Judicial Notice in support of its Motion to Dismiss Plaintiff's FAC. ECF No. 20-3. Specifically, Apex requests judicial notice of seven sets of documents that are complaints, decisions, or findings from state or federal administrative agencies in actions brought by Plaintiff against Defendants for employment-related claims, and two opinions by the Ninth Circuit Court of Appeals related to these administrative actions. *Id.* "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its

---

[1] Because the Court concludes Plaintiff's FCA retaliation claim against GDIT is barred by the statute of limitations, the Court declines to address GDIT's alternative argument for dismissal for failure to state a claim upon which relief may be granted. The Court will address GDIT's and Apex's collateral estoppel claim below. *See infra* Part III.B.2.

authenticity.'" *Lee v. City of Los Angeles*, 250 F.3d at 690 (citation omitted). A Court may take judicial notice of records and reports of administrative agencies. *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991) (citation omitted). Plaintiff has not opposed. The Court **GRANTS** Apex's request for judicial notice of the documents (ECF No. 20-2, Exhibits 1–9), but not for the truth of the facts recited therein. *See Lee v. City of Los Angeles*, 250 F.3d at 690; *King v. California Dep't of Water Res.*, 561 F. Supp. 3d 906, 910 (E.D. Cal. 2021) ("Judicial notice establishes only that these [administrative agency records] are as they are; it does not establish the correctness of any determinations therein.").

### 1. Statute of Limitations

Apex argues that Plaintiff's claim is time-barred because "the uncontroverted facts" show Plaintiff was terminated on May 29, 2018, but did not file his complaint in this action until June 14, 2021. ECF No. 20-1 at 14–15. Apex claims that it is a staffing company and GDIT contracted with it to provide temporary staffing support for the EPA contract. *Id.* at 9. When GDIT removed Plaintiff from its project on May 29, 2018, Apex claims this led to Plaintiff's termination from his employment with Apex on the same date. *Id.* at 10. Apex argues that when GDIT removed Plaintiff, Apex made its decision to terminate Plaintiff the same day, and this is the date of the alleged FCA retaliation action. *Id.* at 15; ECF No. 34 at 4. Apex further argues that in several prior litigation matters brought by Plaintiff against Apex and GDIT, Plaintiff alleged that his termination date was May 29, 2018. *Id.* at 14–15. Apex claims that this litigation is the first time Plaintiff claims he was terminated on June 13, 2018. *Id.* at 15.

Plaintiff disputes this and argues that for the last four years he has stated that he was terminated on June 13, 2018 and reported this termination date to various federal agencies and officials. ECF No. 30-1 at 25. Plaintiff attached to his Opposition a copy of the discharge email from Apex referenced in the FAC and dated June 13, 2018 that reads in part, "Attached you will find a document indicating your employment with Apex

Systems/Apex Life Science has come to an end, which is required by state law." ECF No. 30-2 at 8–9 (Ex. 3 to Oppo.); *see also* FAC ¶ 29.

Accepting the factual allegations in the FAC as true and construing the pleadings in the light most favorable to Plaintiff, the Court finds that Plaintiff's claim against Apex is not barred by the statute of limitations. Apex argues that the judicially noticed documents include statements by Plaintiff that he was terminated on May 29, 2018, which directly contradict the allegation in the FAC that Plaintiff was terminated by Apex on June 13, 2018. However, in one of the documents, a California administrative agency determined that Plaintiff was terminated on May 29, 2018 after considering that "Plaintiff testified that on May 29, 2018, he was removed from the EPA project" and "Plaintiff testified that he was not told by Apex until June 13, 2018, that he was being terminated." ECF No. 20-2 at 17, 40 (Ex. 2). The Court cannot take judicial notice of the correctness of any determinations made in the administrative agency findings, which includes the termination date in this instance. *See Lee v. City of Los Angeles*, 250 F.3d at 690; *King v. California Dep't of Water Res.*, 561 F. Supp. 3d at 910. As for the other judicially noticed documents, all involved claims that were made against both Apex and GDIT or GDIT's predecessor. As the Court has already determined, GDIT terminated Plaintiff on May 29, 2018. It is unclear if the May 29, 2018 termination date on the other documents were determinations made by the administrative agency or a self-reported date indicating Plaintiff's termination by GDIT or Apex or both. For these reasons, the Court cannot find that the judicially noticed documents contradict Plaintiff's allegation of a June 13, 2018 termination date by Apex.

Further, Plaintiff has included a copy of the discharge email he received from Apex dated June 13, 2018, and Apex does not dispute its authenticity. The FCA statute providing relief from retaliatory actions describes such retaliation as when an employee, contractor or agent is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment." 31 U.S.C. § 3730(h). Plaintiff alleges that the retaliation from Apex came in the form of his discharge letter on

June 13, 2018, which is sufficient for pleading purposes. FAC §§ 14 n.2, 29, 81. Apex's argument that the alleged act of retaliation was its *decision* on May 29, 2018 to terminate Plaintiff is not applicable in this Motion to Dismiss because it requires a presentation and consideration of the facts. Accordingly, the Court finds that it is not apparent on the face of the FAC that Plaintiff's claim against Apex is time-barred and **DENIES** Apex's Motion to Dismiss on this ground.

## 2.    Collateral Estoppel

Apex argues that Plaintiff's FCA retaliation claim is barred by collateral estoppel, or issue preclusion, because of Plaintiff's previous legal actions arising from his termination. ECF Nos. 20-1 at 16; 22-1 at 15–19; 34 at 6–8. Plaintiff opposes. ECF No. 30-1 at 46–50.

The Court looks to the judicially noticed decisions made in response to Plaintiff's whistleblower complaint—and his subsequent objections and appeals—against Apex and GDIT filed with the U.S. Department of Labor's Occupational Safety and Health Administration (hereinafter "DOL Proceeding") to determine if the elements of collateral estoppel have been met. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). The DOL Proceeding includes the following decisions: (1) Plaintiff's whistleblower complaint filed with the U.S. Department of Labor ("DOL") on July 18, 2018 and its accompanying notice [ECF No. 20-2 at 43–58, Ex. 3]; (1) the February 22, 2019 investigation report and findings of the DOL [ECF No. 20-2 at 60–64, Ex. 4]; (2) the January 23, 2020 decision of the Administrative Law Judge ("ALJ") of the DOL [ECF No. 20-2 at 66–82, Ex. 5]; (3) the October 22, 2020 decision of the DOL Administrative Review Board [ECF No. 20-2 at 84–90, Ex. 6]; (4) the Ninth Circuit Court of Appeals decision in *Leckner v. General Dynamics Information Technology*, No. 21-70284, 2021 WL 4843881, (9th Cir. Oct. 18, 2021), *cert. denied*, 142 S. Ct. 2872 (2022), *reh'g denied sub nom. Leckner v. Gen. Dynamics*, No. 21-1387, 2022 WL 3580324 (U.S. Aug. 22, 2022) [ECF No. 20-2 at 92–93, Ex. 7]; and (5) the January 25, 2022 Ninth Circuit Court of Appeals order in *Leckner v. General Dynamics Information*

*Technology*, Case No. 21-70284, denying Plaintiff's petition for rehearing en banc [ECF No. 20-2 at 95–96, Ex. 8].

Collateral estoppel applies to proceedings before state or federal administrative agencies when the agency acts "in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 797–98 (1986) (quoting *United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 422 (1966)). "Collateral estoppel applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012) (citation omitted).

### i.   Identical Issues

Courts in the Ninth Circuit look to the following four factors to determine if issues are identical for collateral estoppel:

> (1) Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
> (2) Does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
> (3) Could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
> (4) How closely related are the claims involved in the two proceedings?

*Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 829 (9th Cir. 2018) (citation omitted).

The Court finds substantial overlap between the evidence or arguments advanced in this proceeding and that advanced in the DOL Proceeding. In both proceedings Plaintiff argues that Apex and GDIT retaliated against him for reporting fraudulent billing to the EPA related to GDIT's failure to successfully recover the source code repository and delaying the project, including over-billing or billing for tasks not performed. FAC ¶¶ 18, 24, 88; ECF No. 20-2 at 50–51, 62–63, 76–78, 86. The evidence Plaintiff obtained in

discovery and relied on in the DOL Proceeding are cited by Plaintiff to support his claims in this matter. *See* FAC ¶¶ 15–21, 89 (claiming that "evidence adduced in the [DOL] proceeding—documents, depositions, and testimony—" supports the allegations in the FAC). Thus, discovery and pretrial preparation in the DOL Proceeding are also reasonably expected to have embraced the claims in this matter.

The Court finds the claims in the DOL Proceeding and this matter are closely related. They both involve claims of workplace retaliation that arise from the same alleged facts. Plaintiff claimed in the DOL Proceeding and in this matter that GDIT and/or Apex failed to successfully recover the source code repository for the EPA, delayed the project, billed for work not performed, over-billed, created cybersecurity issues, and then terminated him for reporting these issues to the EPA. In the DOL Proceeding, Plaintiff also argued that his termination was in violation of the False Claims Act's protection against retaliation for reporting false reports made to the government. ECF No. 20-2 at 51.

Although Plaintiff alleged his retaliation claim under a different statute in the DOL Proceeding, the Court finds this matter would apply a similar analysis to the same set of facts. In the DOL Proceeding, Plaintiff's surviving claim for retaliation was an alleged violation of the Sarbanes-Oxley Act ("SOX"). ECF No. 20-2 at 76. The SOX retaliation claim required Plaintiff to demonstrate that "(1) he engaged in protected activity or conduct; (2) his employer knew or suspected, actually or constructively, that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the circumstances were sufficient to raise an inference that the protected activity was a contributing factor in the unfavorable action." ECF No. 20-2 at 76 (citing *Tides v. The Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011)). If Plaintiff established a prima facie case, then the burden shifts to the employer to demonstrate that it would have taken the same adverse employment action in the absence of Plaintiff's protected activity. *Id.* In this matter, Plaintiff alleges an FCA retaliation claim, which requires Plaintiff to demonstrate "(1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated

against the plaintiff because he or she engaged in protected activity." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008) (citations omitted). Both retaliation claims under SOX and the FCA consider protected activity to be reporting, investigating, or causing information to be provided to appropriate authorities that he reasonably believes to be fraudulent conduct by his employer. *See* ECF No. 20-2 at 77; *Moore v. California Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 845–46 (9th Cir. 2002). The elements of both retaliation claims are essentially the same. Their definitions of protected activity differ slightly but both are premised on a common denominator of fraudulent activity. With the shared facts of the two separate retaliation claims, the Court finds the analysis would follow similar rules of law.

Taking the above factors into consideration, the Court finds the issues in the DOL Proceeding and this matter to be substantially identical for collateral estoppel.

### ii.   Issue Previously Litigated and Decided

An issue is actually litigated "when an issue is raised, contested, and submitted for determination." *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019).

The Court finds the retaliation issue was actually litigated and decided in the DOL Proceeding. After Plaintiff filed his initial DOL retaliation complaint, the investigator noted that he considered evidence submitted by Plaintiff, which included various emails between Plaintiff, the EPA representative, and Defendants. ECF No. 20-2 at 63. When Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") following the investigator's dismissal of his complaint, he was represented by counsel, engaged in discovery, took depositions, and the parties participated in briefing on motions for summary judgment. FAC ¶¶ 9–10, 15–21; ECF No. 20-2 at 66, 72 n.6, 77, 78 n.16; ECF No. 30-1 at 48. Plaintiff, appearing pro se, appealed the ALJ's decision granting summary judgment in Defendants' favor to the Administrative Review Board ("ARB"), and the ARB affirmed the ALJ's decision in a reasoned opinion. ECF No. 20-2 at 84–90. Next, Plaintiff, again appearing pro se, appealed to the Ninth Circuit Court of Appeals for review of the ARB's decision, but his petition for review was denied in a reasoned opinion.

ECF No. 20-2 at 92–93. Plaintiff's petition to the Ninth Circuit for panel rehearing and petition for rehearing en banc was also denied. ECF No. 20-2 at 95–96. Finally, the Court notes that after briefing was completed on these Motions, Plaintiff's petition to the U.S. Supreme Court for rehearing was denied.[2] *Leckner v. Gen. Dynamics*, No. 21-1387, 2022 WL 3580324, at *1 (U.S. Aug. 22, 2022). Throughout the DOL Proceeding, Plaintiff's retaliation issue against GDIT and Apex was raised, contested, and submitted for determination.

The Court is not persuaded by Plaintiff's argument that the issue was not actually litigated because the ALJ "failed to put any of his evidence on record and took an email out of context." ECF No. 30-1 at 48; *see also* ECF No. 20-2 at 67 n.3, 73 n.8, 78 & n.16. Plaintiff was represented by counsel before the ALJ, had otherwise substantially participated in the litigation, took discovery, and had the opportunity to submit evidence, but failed to do so. *See In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (finding an issue was actually litigated despite an uncontested motion for summary judgment because the plaintiff had actively participated in the litigation for sixteen months before "giving up"). Accordingly, the Court finds the retaliation issue against Defendants was previously litigated and decided in the DOL Proceeding.

### iii.    Full and Fair Opportunity to Litigate

The Court finds that Plaintiff and Defendants had a full and fair opportunity to litigate the retaliation issue in the DOL Proceeding for the same reasons as stated above. *See supra* Part III.B.2.ii. Plaintiff brought a SOX retaliation claim against Defendants to a federal administrative agency acting in a judicial capacity and then appealed to the ALJ, the ARB, the Ninth Circuit, and the Supreme Court, receiving reasoned opinions from all

---

[2] Therefore, the Court finds Plaintiff's argument that the retaliation issue has not been fully litigated and decided because his petition to the Supreme Court was pending is now moot. Even if it was pending, it would not bar issue preclusion. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988) (finding that an undecided appeal does not "affect the 'firmness'" of lower court decisions such that it would operate as a bar to issue preclusion).

except the Supreme Court. *See Kwan v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 20-35132, 2021 WL 1118023, *23 (9th Cir. Mar. 24, 2021) ("Federal courts apply preclusive effect to determinations made by administrative agencies acting in a judicial capacity, so long as the parties had an opportunity to litigate the matter."). The Court is unconvinced by Plaintiff's arguments that he did not have a full and fair opportunity to litigate because he "obtained no relevant documents during discovery and defendants' employees lied in depositions." ECF No. 30-1 at 49. Plaintiff offers no support for these bald assertions. Nor does this explain why Plaintiff did not even submit relevant exhibits that were available to him, such as his own declaration or emails in which he was the sender or recipient. *See* ECF No. 20-2 at 67 n.3, 73 n.8, 78, 88 n.10.

### iv.    Issue was Necessary to Decide the Merits

The Court finds the retaliation issue was necessary to decide the merits in the DOL Proceeding. The SOX retaliation claim and the FCA retaliation claim are premised on the same alleged facts of fraudulent claims made to the EPA by Defendants. The retaliation issue was central to the merits of the DOL Proceeding, which alleged that Plaintiff was terminated in retaliation for reporting fraudulent claims made to the EPA by Defendants. The ALJ found Plaintiff had not alleged fraud or concerns suggestive of fraud in his disclosures to the EPA, and that the EPA's Thomas "knew about and directed [GDIT's predecessor] to reconstruct the [source code] repository despite the cost; he was not deceived." ECF No. 20-2 at 78. Because Plaintiff failed to allege fraudulent activity by Defendants, his retaliation claim was dismissed in the DOL Proceeding, and this decision was affirmed at each appeal.

Based on the above, the Court finds the elements of collateral estoppel are met, and Plaintiff is precluded from relitigating the retaliation issue in this matter. Accordingly, the Court finds Plaintiff's FCA retaliation claim against Apex and GDIT is barred by collateral estoppel and must be **DISMISSED** without leave to amend.

/ / /

/ / /

### 3.     Fails to State a Claim Upon Which Relief May be Granted

Apex argues that Plaintiff fails to state a claim for FCA retaliation. ECF No. 20-1 at 16–19; ECF No. 34 at 8–10. Plaintiff disputes this. ECF No. 30-1 at 55–59.

"A plaintiff alleging a[n] FCA retaliation claim must show three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d at 1103 (citations omitted).

Apex makes two arguments that Plaintiff fails to allege he was engaged in protected activity.

First, Apex argues that Plaintiff fails to allege he was engaged in protected activity under the FCA because the fraudulent activity alleged by Plaintiff does not directly relate to payments to Apex from the government, and thus cannot be considered protected activity. ECF No. 20-1 at 17. Specifically, Apex claims that Plaintiff "failed to allege that Apex made a false statement to the EPA with the intent for that statement to induce the government to pay it." *Id.* at 21. Apex further argues that Plaintiff also failed to allege that Apex, as a subcontractor, submitted false statements to GDIT, the prime contractor, with the intention that GDIT would use those statements to obtain payments owed to Apex from the government. *Id.* at 20.

To be engaged in protected activity under the FCA, "the plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996). The Ninth Circuit has clarified that "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore v. California Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d at 845.

Plaintiff alleges in the FAC that he was jointly employed by GDIT and Apex [FAC ¶ 29] but specified that Apex was a subcontractor that provided "engineering

services" to GDIT, and GDIT retained overall responsibility [FAC ¶ 55]. GDIT was the prime contractor to the EPA. FAC ¶ 2. GDIT's contract with the EPA required GDIT to transition the "EMP mission-critical system" from [prior contractor] Salient over to GDIT in 2017, and in 2018 "begin maintenance and implementation of the EMP system." FAC ¶ 59. The FAC contains allegations that GDIT made false claims to EPA management that it fulfilled its contractual obligation to transition the EMP and its source code repository away from the previous contractor, and that the system and infrastructure were reliable and secure, and thus submitted false claims for payment. FAC ¶¶ 16, 17, 19, 21, 22, 88, 102. Plaintiff alleges that Apex made false claims when it represented that the EMP was operational and "implementation ready." FAC ¶¶ 113, 114. Plaintiff alleges that Apex and GDIT fraudulently billed the EPA. FAC ¶¶ 18, 73.

Taking the FAC allegations as true, the Court finds that the false claims made by Apex do not adequately show Plaintiff was investigating matters that could reasonably lead to a viable FCA claim against Apex. The allegations that Apex fraudulently billed the EPA and made false claims about the EMP are contradicted by allegations that GDIT was the prime contractor and had overall responsibility for the contract with the EPA. "[A] subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim." *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 671 (2008). GDIT subcontracted with Apex to provide engineers and employees such as Plaintiff to work on the EPA contract. GDIT is alleged to have the responsibility for the EMP transition, which contradicts the claims that the staffing company—Apex—made false representations that the EMP was operational and ready for implementation. It is not apparent in the FAC what false statements Apex submitted to GDIT with the intent that they be used by GDIT to get the EPA to pay its claim. Although Plaintiff argues in his Opposition that he alleged that GDIT and Apex conspired together to defraud the United States by knowingly submitting false claims [ECF No. 30-1 at 34–35], the Court does not find allegations of conspiracy in the FAC.

Second, Apex argues that Plaintiff fails to show he was investigating matters that could reasonably lead to a viable FCA claim because the alleged false statements are immaterial. ECF No. 20-1 at 17, 21–23. Specifically, Apex argues that Plaintiff informed the EPA of all the problems with the EMP system through multiple meetings, phone calls, emails, and messages, and in response, the EPA ordered GDIT to work around the problem of the lack of source code and still paid GDIT. *Id.* at 22. Apex claims that the alleged false statements that the EMP was transitioned and working properly were immaterial because the EPA was aware of the difficulties and still paid GDIT. *Id.*

"[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 192 (2016). Under the FCA, a false claim is material if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Universal Health Servs., Inc.*, 579 U.S. at 195.

The Court finds that Plaintiff has not sufficiently alleged that he was investigating matters that could lead to a viable FCA claim because he fails to plead that the alleged false claims were material to the EPA's decision to pay. The allegations in the FAC show that Plaintiff informed Rob Thomas, EPA EMP Manager, EMP System Owner and Project Manager, of the problems with the EMP "in detail over the course of four months," including "GDIT's failure to ever engage in the transition, failure to provide necessary accesses, rights, and permissions to the engineering team, clear EMP's cybersecurity violations, and the risk that EPA employees might be at risk at working in jobs or locations for which they required EMP access." FAC ¶ 72; *see also* FAC ¶¶ 24, 65, 81, 82, 88, 90. Plaintiff reported to EPA management that federal dollars were not being "honestly spent in a manner that best serves workers, the public, the taxpayer, and the environment." FAC ¶ 24. Plaintiff also reported to EPA management "illegal and prohibited contract practices

which included improper and fraudulent billing; improper charges for 'idle time'; violations of EPA Policy, FISMA, and NIST regulations; and cybersecurity threat risks and breaches." *Id.* Plaintiff "informed EPA in a status meeting and in emails about the impending failure of the implementation [of the EMP] without the original source code repository" and added that the EPA "instructed GDIT to perform a late transition." FAC ¶ 13. In sum, Plaintiff alleges that (1) GDIT falsely claimed that the EMP was successfully transitioned, was secure, and had met its contractual obligations, and (2) Apex falsely claimed that the EMP was operational without the source code and was implementation ready, but also that the EPA was informed by Plaintiff that those claims were false and still paid GDIT. That the EPA was aware of all the deficiencies and problems with the EMP and still paid GDIT indicates that the alleged false claims were not material to its decision to pay and therefore do not constitute a viable FCA claim. *See Universal Health Servs., Inc.*, 579 U.S. at 192, 195; *see also id.* at 195 n.6 (rejecting assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment).

For the reasons set forth above, the Court finds Plaintiff does not sufficiently plead that he was engaged in protected activity under the FCA. The failure to sufficiently plead one of the necessary elements of an FCA retaliation claim thus results in a failure to state a claim upon which relief can be granted, and the claim must be **DISMISSED**.

## IV. CONCLUSION

Based on the above, the Court rules as follows:

1. The Court **GRANTS** GDIT's Motion to Dismiss **WITH PREJUDICE** and without leave to amend.

/ / /

/ / /

/ / /

/ / /

/ / /

2. The Court **GRANTS** Apex's Motion to Dismiss **WITH PREJUDICE** and without leave to amend.[3]

The Clerk of Court is directed to close this case.

**IT IS SO ORDERED**.

Dated:  September 15, 2022

_____
Honorable Linda Lopez
United States District Judge

---

[3] If the Court had not found that collateral estoppel barred the retaliation claim, the Court would have granted Apex's Motion to Dismiss for failure to state a claim upon which relief may be granted without prejudice and with leave to amend. However, the Court finds collateral estoppel applies and that it would be futile to allow amendment where collateral estoppel precludes the FCA retaliation claim.